1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CAROL M. LEONARD, | ) | Case No.: 12-CV-2526 AJB (MDD) |
| Plaintiff, | ) | ORDER: |
| | ) | |
| v. | ) | (1) OVERRULING PLAINTIFF'S OBJECTIONS TO THE REPORT & RECOMMENDATION OF THE MAGISTRATE JUDGE; |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | (2) ADOPTING THE REPORT & RECOMMENDATION OF THE MAGISTRATE JUDGE; |
| Defendant. | ) | |
| | ) | (3) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; and |
| | ) | |
| | ) | (4) GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT. |
| | ) | |
| | ) | [Doc. Nos. 25, 24, 18, and 19, respectively] |
| | ) | |

       On October 17, 2012, Carol M. Leonard ("Plaintiff") filed a Complaint seeking

judicial review of the Social Security Administration Commissioner's decision denying

her claim for disability insurance benefits. (Doc. No. 1.)  On April 1, 2013, Plaintiff filed

a Motion for Summary Judgment. (Doc. No. 18.)  The Acting Commissioner of Social

Security ("Defendant") filed a Cross Motion for Summary Judgment on April 22, 2013. (Doc. No. 19.)  On January 21, 2014, Magistrate Judge Mitchell D. Dembin issued a Report and Recommendation ("R&R") finding the Administrative Law Judge's ("ALJ's") written opinion to be supported by substantial evidence, and recommending the Court deny Plaintiff's motion for summary judgment and grant Defendant's cross-motion for summary judgment. (Doc. No. 24.)  On February 3, 2014, Plaintiff filed an Objection to the R&R.  (Doc. No. 25.)  After a review of the parties' pleadings and the entire record before it, the Court OVERRULES Plaintiff's Objections, ADOPTS the R&R in its entirety, DENIES Plaintiff's Motion for Summary Judgment, and GRANTS Defendant's Cross-Motion for Summary Judgment.

## [1]I.    BACKGROUND

Plaintiff was born March 6, 1956, and was 48 years old on her alleged onset date of disability of September 27, 2004.  Plaintiff's medical reports span the period of 2004 to 2009 and document Plaintiff's conditions of cervical and lumbar degenerative disease and spondylosis, mild to moderate pain disorder, mild arthritis of the right hip, and mild carpal tunnel syndrome.

On June 7, 2006, Plaintiff filed for disability insurance benefits under Title II of the Social Security Act, alleging disability beginning September 27, 2004.  (Administrative Record ("A.R.") 163, 340).  On August 28, 2006, her claim was denied.  (A.R. at 182).  On February 9, 2007, after Plaintiff requested reconsideration, her claim was again denied.  (*Id.* at 190).  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (*Id.* at 197).  On February 26, 2008, a hearing was held before ALJ James S. Carletti.  (*Id.* at 60-127).  Plaintiff appeared and was represented by counsel.  (A.R. at 60).  At the hearing, Plaintiff, medical expert Dr. George Weilepp, and vocational expert Mark Remas testified.  (*Id.*)

---

[1] Magistrate Judge Dembin's R&R provides a thorough and detailed summary of the relevant factual background in this case, and the majority of this section has been taken directly from the R&R.

On October 8, 2008, the ALJ issued a written decision finding that Plaintiff was not disabled. (*Id.* at 167-178.)  Plaintiff appealed and the Appeals Council remanded the case to the ALJ for further proceedings. (*Id.* at 179.)  The Appeals Council instructed the ALJ to "[f]urther evaluate the claimant's neck impairment . . . along with the claim-ant's pain disorder."  The Council further instructed the ALJ to hear testimony from a vocational expert regarding the expanded record before him.

On December 17, 2010, a second hearing was held before the ALJ. (*Id.* at 133-162.)  Plaintiff appeared and was represented by counsel. (*Id.* at 60.)  At the hearing, Plaintiff, medical expert Dr. George Weilepp (mistakenly referred to as Dr. Wyliff in the transcript), and vocational expert Gloria Lasoff testified. (*Id.*)  On December 27, 2010, the ALJ issued a decision finding Plaintiff was not disabled. (*Id.* at 37.)  On August 24, 2012, the Appeals Council denied Plaintiff's request for review. (*Id.* at 1-6.)

The ALJ's written opinion found Plaintiff was not disabled at any time from September 27, 2004, her alleged onset date, through December 31, 2006, the date last insured. (*Id.* at 51.)  The ALJ found Plaintiff had impairments that in combination are "severe," including cervical and lumbar degenerative disease and spondylosis, mild to moderate pain disorder, mild arthritis of the right hip, and mild carpal tunnel syndrome symptoms, but ultimately concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1530(d), 404.1525 and 404.1526). (*Id.* at 42, 46.)  In addition, the ALJ concluded Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) except she is able to stand, walk, and sit for six hours each in an eight workday; stand and walk for forty minutes at a time; lift and carry twenty pounds occasionally and ten pounds frequently; no overhead reaching; and no climbing ladders, ropes and scaffolds; and must avoid hazards. (*Id.* at 46.)  The ALJ found Plaintiff's statements concerning intensity, persistence and limiting effects of her symptoms and the extent to which those symptoms limited her ability to work to be not credible. (*Id.* at 47.)

On October 17, 2012, Plaintiff filed a Complaint with this Court seeking judicial review of the Social Security Administration's decision. (Doc. No. 1.) On February 21, 2013, Defendant answered and lodged the administrative record with the Court. (Doc. No. 12.) On April 1, 2013, Plaintiff moved for Summary Judgment. (Doc. No. 18.) On April 22, 2013, Defendant cross-moved for Summary Judgment, and responded in opposition to Plaintiff's Motion. (Doc. Nos. 19, 20.) On May 6, 2013, Plaintiff responded in opposition to Defendant's Cross-Motion. (Doc. No. 21.) On January 21, 2014, Magistrate Judge Dembin issued the R&R finding the ALJ's written opinion to be supported by substantial evidence, and recommending the Court deny Plaintiff's motion for summary judgment and grant Defendant's cross-motion for summary judgment. (Doc. No. 24.) On February 3, 2014, Plaintiff filed an Objection to the R&R. (Doc. No. 25.)

## II.    DISCUSSION

### A.    Legal Standards

#### 1.    Standard of Review for Social Security Determinations

An unsuccessful applicant for social security disability benefits may seek judicial review of a final agency decision. 42 U.S.C. § 405(g). A reviewing court must affirm the agency's decision if it is supported by substantial evidence and applies the correct legal standards. *Id.*; *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citing *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 599 (9th Cir.1999)).

//

//

### 2.   Standard of Review for the Magistrate Judge's R & R

A district judge must "make a *de novo* determination of those portions of the [R&R] to which objection is made." 28 U.S.C. § 636(b)(91); Fed. R. Civ. P. 72(b)(3); *see United States v. Remsing*, 874 F.2d 614, 617 (9th Cir. 1989). The district judge "may accept, reject, or modify, in whole or in part, the finding or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## B.   Analysis

Plaintiff objects to the R&R on two grounds: (1) The Magistrate Judge improperly found Dr. Weilepp's opinions constituted substantial evidence in support of the ALJ's decision that Plaintiff was not disabled; and (2) the Magistrate Judge improperly found that the ALJ's reasons for discounting Ms. Leonard's testimony to be "clear and convinc-ing." The Court will address Plaintiff's contentions in turn.

### 1.   The ALJ's Conclusion that Plaintiff Was Not Disabled is Supported by Relevant Evidence that a Reasonable Person Might Accept as Adequate to Support the Conclusion

Plaintiff's first objection to the R&R involves the Magistrate Judge's conclusion that the opinions of the non-examining medical expert, Dr. Weilepp, constituted substan-tial evidence in support of the ALJ's decision. Plaintiff argues the Magistrate Judge improperly relied on evidence of decreased pain to support his conclusion, and in doing so, failed to address Plaintiff's main point of contention - that her decreased pain has not resulted in increased functioning capacities. (Doc. No. 25 at 4.) For the reasons outlined below, the Court finds the Magistrate did not err in concluding Dr. Weilepp's testimony rose to the level of substantial evidence.

The ALJ concurred with the opinion of Dr. Weilepp, who after examining the entire record, found the Plaintiff's pain disorder to be mild to moderate in nature. (A.R. at 49.) The ALJ explained his findings concerning Dr. Weilepp's testimony as follows:

> [Dr. Weilepp] tesitifed that he had reviewed the entire medical file [and] [h]e gave a detailed and longitudinal summary of the claimant's medical history finding that the claimant had transferred from OxyContin in December, 2006 and as of August 22, 2006, her head was clearer. He testified that ablation killed her pain, but it grew back in 3-6 months. Dr. Weilepp found that the claimant has pain disorder from multiple vehicle accidents and had been

treated with surgical care, nerve ablation, physical therapy, and narcotics until 2006 that was mild to moderate in nature. He also found cervical and lumber spondylosis that was mild to moderate in severity, severe, and long standing with aggravation by injuries and mild arthritis of the right hip with hip disease that was not significantly severe. She also had carpal tunnel symptoms without surgery and was mild in nature. Her restrictions were not found due to a lack of neurological deficiency and other than her complaints of pain her restrictions of activities were consistent with her cervical or lumbar problem. Based on these records, it was his expert, medical opinion that the claimant did not meet or equal the criteria of 1.04 or 1.02A or B. The claimant was found to be able to perform restricted light activities and could not perform continuous reaching or climbing ladders and able to perform frequent overhead reaching with her medications as of the date of the hearing. The undersigned concurs with the Medical Expert's opinion and so finds.

(*Id.*)

Plaintiff argues Dr. Weilepp's conclusion is inconsistent with the evidence on record, and therefore does not provide adequate support for the ALJ's opinion. Specifically, Plaintiff asserts Dr. Weilepp's findings were "predicated upon the false impression that [Plaintiff] benefitted from her ablation and narcotic pain regimen to the extent that it directly translated to her ability to physically function." (Doc. No. 18 at 5.) Plaintiff claims the medical evidence of record demonstrates she has *not* benefitted from her treatment to the extent that she is now able to physically function or engage in gainful activity. (*Id.*; Doc. No. 25 at 4.) As such, Plaintiff argues that because Dr. Weilepp's testimony reflects a *different* interpretation of the medical evidence - i.e. that Plaintiff is able to perform restricted light work, - that "a reasonable person would not accept Dr. Weilepp's testimony," and for that reason it fails to rise to the level of substantial evidence. (Doc. No. 18 at 5.)

After considering Plaintiff's argument, the Magistrate Judge found that the ALJ properly found Dr. Weilepp's opinion of Plaintiff's claimed disabilities was based upon the record as a whole and generally consistent with that record. (Doc. No. 24 at 13.) The ALJ and the Magistrate Judge both noted that Dr. Weilepp reviewed Plaintiff's entire medical record including the findings of Dr. Yee, Dr. Nelson, and Dr. Phillip, all of whom independently reported impairments mild to moderate in nature and that the Plaintiff was generally responsive to medical treatment. (*Id.* at 6, 11-12; A.R. at 47, 151.) In fact, Dr. Phillip, Plaintiff's treating physician, reported on March 28, 2006, that the

claimant reported her pain was much more manageable and that she had benefit from the cervical radiofrequency ablation. Ultimately, the ALJ found that "no treating or examining source determined that the claimant's impairments were totally debilitating or rendered the claimant unemployable." (A.R. at 48.)

"Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). As described above and in the R&R, Dr. Weilepp's opinion was based on a review of the Plaintiff's *entire* medical record, and was generally consistent with the opinions of the other examining and treating physicians of record. (Doc. No. 24 at 10-12) Thus, to the extent Plaintiff suggests the ALJ's opinion was based entirely on Dr. Weilepp's testimony, Plaintiff's objection and the corresponding argument in her Motion for Summary Judgment are unpersuasive.

The Court finds Plaintiff's argument that the Magistrate Judge failed to address her main contention - that her decreased pain has not resulted in increased functioning abilities - unpersuasive and unsupported by the record as a whole. On the contrary, as the R&R points out at length, the evidence Plaintiff use to support her conclusion also contain information that could reasonably be interpreted to support the ALJ's conclusion. (Doc. No. 24 at 12-13.) The ALJ provided a detailed and thorough summary of the facts and medical evidence on record, stated his interpretation thereof, and made findings which were rationally supported by the evidence. *See Morgan,* 169 F.3d at 600-01. Numerous examining and treating physicians - not just Dr. Weilepp - found Plaintiff's pain to be mild to moderate in nature and responsive to medical treatment. (A.R. at 47, 49.) After reviewing the entire record, Dr. Weilepp testified that there was "a paucity of evidence of upper extremity restriction, neurologically intact or otherwise, other than the pain issue . . . . So if pain is improved enough to be functional for six months after ablation or for use of Oxy versus Vicodin, she could probably be allowed to be func-

tional . . . as I suggested." (*Id.* at 157.)  Plaintiff does not dispute that the numerous medications she has taken and the medical procedures she has undergone have reduced her level of her pain. (Doc. No. 25 at 3.)

"Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002 ) (citing *Morgan,* 169 F.3d at 599).  Because the medical evidence shows Plaintiff's alleged inability to work stems from pain, (A.R. at 42), and because Plaintiff and the aforementioned physicians reported reduced pain through medication and treatment, the ALJ's conclusion that Plaintiff had the residual functional capacity to perform restricted light work was rational and should not be disturbed.

## 2.   The ALJ Provided Clear and Convincing Reasons for Discounting the Plaintiff's Testimony.

An ALJ must perform a two step analysis when deciding whether to accept a claimant's subjective symptom testimony.  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  The first step is a threshold test set out in *Cotton v. Bowen* that requires the claimant "produce medical evidence of an underlying impairment which is reasonably likely to be the cause of the alleged pain." 799 F.2d 1403, 1407 (9th Cir. 1986); *see also Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991).  "Once a claimant meets the *Cotton* test and there is no affirmative evidence suggesting she is malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."  *Smolen*, 80 F.3d at 1283-84 (citing *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir.1993)).  "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing."  *Thomas*, 278 F.3d at 958-59.

Here, the ALJ concluded Plaintiff met her burden under the *Cotton* test, but ultimately found her testimony "concerning the intensity, persistence and limiting effects of these symptoms [is] not credible to the extent they are inconsistent with the above residual functioning capacity assessment." (A.R. at 45.)  As such, the ALJ was required

to make specific findings stating clear and convincing reasons for rejecting her subjective testimony. *Smolen*, 80 F.3d at 1283-84.

Plaintiff objects to the R&R on the grounds that the Magistrate Judge improperly concluded the ALJ gave clear and convincing reasons for rejecting Plaintiff's subjective pain testimony. (Doc. No. 25 at 4.) Specifically, Plaintiff asserts the Magistrate Judge erred when he found the ALJ to have properly relied on: (1) a lack of hospitalization and conservative, routine maintenance; (2) a lack of objective evidence; (3) the effectiveness of the medications and treatment; and (4) Plaintiff's ability to perform certain activities of daily living. (*Id.* at 4-5.) For the reasons outlined below, the Court agrees with the R&R and finds the ALJ to have provided clear and convincing reasons for rejecting Plaintiff's subjective pain testimony.

### a.     Lack of Hospitalization and Conservative Routine Maintenance

Plaintiff objects on the grounds that the Magistrate Judge erred in finding that the ALJ properly relied on a lack of hospitalization and conservative routine maintenance to reject Plaintiff's testimony. Plaintiff makes the following argument:

> Judge Dembin states that the ALJ properly relied on a lack of hospitalization and conservative, routine maintenance to reject Leonard's testimony. Report and Recommendation at 16:1-3. In doing so, Judge Dembin ignored the fact that Leonard underwent numerous ablation treatments. AR 47. Even Dr. Weilepp stated that these procedures could be construed as invasive procedures. AR 111. The fact that Carol Leonard underwent a series of these ablation procedures actually supports her testimony regarding her functional limitations.

(*Id.*)

Plaintiff's objection, however, inaccurately portrays the Magistrate Judge's consideration of her ablation treatment. Plaintiff only cites to three lines of the R&R in support of her objection, in which the Magistrate Judge states: "Plaintiff's lack of hospitalization and significant active care beyond conservative routine maintenance insufficient to find that her cervical or lumbar complaints are disabling." (Doc. No. 24 at 16.) While ablation is not specifically mentioned in *this sentence*, there are references to the ALJ's consideration of Plaintiff's ablation treatment throughout the R&R.

1    For example, on page 11 of the R&R, the Magistrate Judge cites to page 47 of the

2    A.R. where the ALJ states:

3        "J. Yee, M.D., reported on December 13, 2004, that the claimant sciatic nerve
         ablations helped 80%. (Exhibit 1F page 60). On February 9, 2005, Dr. Phillips
4        reported that the claimant had undergone multiple radio frequency ablations for
         her low back pain that had provided her with 50%-60% pain relief . . . . Lisa
5        A. Phillip, M.D. reported on March 28, 2006, that the claimant reported that
         her pain was much more manageable and that she had benefit from the cervical
6        radiofrequency ablation. It was found that the claimant's chronic neck and low
         back pain had been responsive to radiofrequency ablation . . . These findings
7        are indicative that the claimant's complaints are not fully substantiated by the
         objective medical conclusions and her symptoms may not have been as limiting
8        as the claimant has alleged in connection with this application."

9    (A.R. at 47.)

10   Immediately following this discussion of Plaintiff's ablation treatment, the ALJ

11   makes the statement to which the Plaintiff now objects.[2]  (*See* A.R. at 47; Doc. No. 25 at

12   4-5; Doc. No. 24 at 16.)  In light of the fact that the ALJ made the statement at issue

13   *immediately after* discussing Plaintiff's ablation treatments, Plaintiff's assertion that

14   "Judge Dembin ignored the fact that Leonard underwent numerous ablation treatments"

15   is without merit. (Doc. No. 25 at 4-5.)  Plaintiff improperly looks at the Magistrate

16   Judge's statement in isolation, instead of looking at the context in which it was made,

17   citations to the administrative record upon which it relies, as well as other portions of the

18   R&R addressing similar subjects.

19   The Court also rejects Plaintiff's objection to the extent it implies the Magistrate

20   Judge failed to consider the "invasiveness" of Plaintiff's ablation treatment. Plaintiff's

21   objection states:  "[e]ven Dr. Weilepp stated that these procedures could be construed as

22   invasive procedures. A.R. 111."  (Doc. No. 25 at 5.)  Plaintiff's objection, however,

23   misconstrues Dr. Weilepp's testimony.  In response to being asked whether electrical

24   ablation is as invasive as a different surgery, Dr. Weilepp stated:

25       Well, it depends upon how you define invasive. It's specific, it is ablative,
         which means you can actually electrically cut it essentially, or impact its
26

27   _____
28   [2] The ALJ states: "The record fails to document that the claimant has been hospitalized for her
     impairment or indicate that the claimant has received significant active care other than for her
     conservative routine maintenance." (A.R. at 47) The Magistrate Judge uses the same language in the
     R&R. (Doc. No. 24 at 16.)

                                          10                        12-cv-2526 AJB (MDD)

1   normal function with use of a knife blade. But you in fact, and pretty
2   successfully in this case, see improvement with it. And it's not something you
    can recover from in terms of that particular nerve loss. But it blocks the
3   pain...It's much more permanent than an injection, than therapy. Some people
    feel it's much – depending on what the circumstances are and what's more
4   helpful. And it's less dangerous than a surgical procedure with a knife. And its
    more selective.

5   (A.R. at 111.)

6       Dr. Weilepp was responding to a question asking him to compare the invasiveness

7   of ablation when compared to a different surgery.  (*Id.*)  His comments do not directly

8   address whether he believes ablation treatment to be invasive in and of itself.  Instead, Dr

9   Weilepp describes "invasiveness" as a relative concept, noting that ablation could be

10  considered invasive in the sense that it is permanent and not something you can recover

11  from.  However, in the same breath, he states that ablation is specific, targeted, less

12  dangerous than surgery with a knife, and that it was successful in this case.  As such,

13  Plaintiff's reference to Dr. Weilepp's testimony was misleading to the extent Plaintiff

14  relied on it to prove the invasiveness of ablation treatment.

15      **b.    Lack of Objective Evidence**

16      Plaintiff also objects to the Magistrate Judge's approval of the ALJ's reliance on

17  lack of objective evidence in his credibility assessment. Plaintiff's objection states:

18      Judge Dembin also cited the ALJ's reliance on the alleged lack of objective
        evidence. Report and Recommendation at 15:26-28 and 16:13-24. However,
19      in *Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991) (en banc), the Ninth Circuit
        rejected the "Bates standard" from *Bates v. Sullivan*, 894 F.2d 1059, 1072 (9th
20      Cir. 1990), which required a claimant to produce evidence that corroborated
        the degree of pain symptoms alleged. Instead, the Court in *Bunnell* affirmed the
21      "Cotton standard" from *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986),
        that a claimant is merely required to produce evidence of an underlying
22      impairment that is reasonably likely to cause some of the symptoms alleged.
        Carol Leonard fulfilled that burden as the ALJ conceded that point.
23
    (Doc. No. 25 at 5) (citing *Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991)).
24
        It is undisputed that the Plaintiff in this case met her burden under *Cotton*. (A.R. at
25
    47; R&R at 15:8-14.)  The *Cotton* test, however, is only the first step in the ALJ's two-
26
    step credibility analysis.  Plaintiff's objection suggests the ALJ's reliance on lack of
27
    objective evidence was improper *because* Plaintiff had already satisfied the *Cotton* test,
28
    and under *Bunnell*, she was not required to produce evidence corroborating subjective

1  pain testimony.  In other words, Plaintiff argues the ALJ cannot on the one hand find

2  Plaintiff produced sufficient evidence under *Cotton,* then on the other hand discredit her

3  testimony based on a lack of objective evidence.

4       Plaintiff's argument is inconsistent with the second step of the ALJ's credibility

5  analysis.  Ninth Circuit case law is clear that after a claimant satisfies the *Cotton* test, the

6  ALJ can still reject the claimant's testimony regarding the severity of her symptoms if the

7  ALJ makes specific findings stating clear and convincing reasons for doing so.  *Smolen*,

8  80 F.3d at 1283-84 (citing *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir.1993)).

9       Were the Court to accept Plaintiff's argument, a finding that a claimant satisfied

10 the *Cotton* test would prevent an ALJ from considering a lack of objective medical

11 evidence in the second step of the credibility analysis.  Such an interpretation is

12 inconsistent with the case law which provides that "[a]lthough the inconsistency of

13 objective findings with subjective claims may not be the sole reason for rejecting

14 subjective complaints of pain, it is one factor which may be considered with others."

15 *Khounesavatdy v. Astrue*, 549 F. Supp. 2d 1218, 1225 (E.D. Cal. 2008) (internal citations

16 omitted); *see also Bunnell,* 947 F.2d at 346-47.[3]  Thus, the Court rejects Plaintiff's

17 objection to the extent it suggests satisfaction of the *Cotton* test precludes an ALJ from

18 using lack of objective evidence to discredit a claimant's testimony.

19     **c.    The Effectiveness of the Medications and Treatment**

20     Plaintiff objects to the Magistrate Judge's consideration of the effectiveness of

21 Plaintiff's medications and treatment. (Doc. No. 25 at 5.)  Plaintiff's objection states:

---

25
26  [3]  Moreover, Plaintiff's objection cites to pages 15 and 16 of the R&R.  (Doc. No. 25 at 5.)  The cited portions of the R&R deal with the ALJ's finding that there was a lack of objective clinical findings establishing Plaintiff's *inability to perform work*.  This is separate and distinct from the ALJ's finding
27  that Plaintiff provided sufficient evidence of an underlying impairment that is reasonably likely to cause some of the alleged symptoms, as required by *Cotton*.  The Court notes that the two findings are not
28  necessarily inconsistent with one another - i.e. an ALJ may find the claimant produced sufficient evidence to satisfy *Cotton*, yet still might find the evidence on record insufficient to show the claimant is unable to work.  Such is the case here.

12-cv-2526 AJB (MDD)

1    "[t]he first argument that Carol Leonard addresses this point, to wit, the reduction in pain

2    symptoms did not correspond to a greater functioning capacity." (*Id.* at 5.)[4]

3           However, the ALJ's conclusion regarding this issue was supported by substantial

4    evidence and was rational.  (*See* Part (B)(1), *supra,* at p. 5-8.)  "If the ALJ's credibility

5    finding is supported by substantial evidence in the record, we may not engage in second-

6    guessing." *Thomas*, 278 F.3d at 958-59.  As such, the Court rejects Plaintiff's objection

7    to the Magistrate Judge's consideration of the effectiveness of Plaintiff's medications

8    and treatment.

9

10          **d.      Plaintiff's Ability to Perform Certain Activities of Daily Living**

           Plaintiff's final objection involves the ALJ's consideration of Plaintiff's ability to

11   perform certain activities of daily living.  Plaintiff asserts:

12
           [T]he mere performance of certain activities of daily living is not enough.
13         Plaintiff specifically cited *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007),
           that the ALJ must cite evidence that a claimant performs those activities
14         sufficiently enough to meet the threshold for transferable capabilities.
           Plaintiff's MSJ at 8:1-12. Judge Dembin does not explain, and neither did the
15         ALJ, how the performance of those sporadic activities of daily living translate
           to Carol Leonard's ability to perform regular and continuing activities, i.e.,
16         eight hours of work for five days per week.

17   (Doc. No. 25 at 5-6.)

18          Plaintiff cites to *Orn v. Astrue,* a case where an ALJ discredited the claimant's

19   subjective testimony after considering, among other things, the claimant's daily

20   activities.  495 F.3d 625, 631 (9th Cir. 2007).  The ALJ concluded that Orn's testimony

21   describing his "fatigue, shortness of breath and dysfunction" was "not totally credible."

22   *Id.* at 635.  In coming to this conclusion, the ALJ explained that Orn's "reading,

23   watching television and coloring in coloring books indicate that he is more functional

24   than alleged."  *Id.* at 639.  On appeal, the Ninth Circuit found the ALJ erred in

25

26

27          ⁴ Plaintiff cites to a portion of the R&R which states: "Additionally, the ALJ stated he took into
28   consideration "the type, dosage, effectiveness, and adverse side-effects of any pain medication; other
     treatment, other than medication for relief of pain" and found that her pain allegations were out of
     proportion with the record." (R&R at 16.)

1    discrediting the claimant's testimony because the reasons provided were not clear and

2    convincing.  *Id.* at 628.  The Court in *Orn* explained:

3         Neither of the two grounds for using daily activities to form the basis of an
         adverse credibility determination are present in Orn's case. First, as he
4         described them, Orn's activities do not contradict his other testimony. Second,
         Orn's activities do not meet the threshold for transferable work skills, the
5         second ground for using daily activities in credibility determinations.

6    *Id*. at 639 (internal citation omitted).

7         Consistent with *Orn*, other courts have found that while "[t]he mere fact of a

8    claimant's carrying on certain daily activities does not necessarily detract from credibility

9    as to overall disability," and ALJ may draw a negative inference "where the activities

10   contradict the other testimony of the claimant, or where the activities are of a nature and

11   extent to reflect transferable work skills." *Elizondo v. Astrue*, 2010 WL 3432261, at *5

12   (E.D. Cal. Aug. 31, 2010); s*ee also Perez v. Astrue*, 831 F. Supp. 2d 1168, 1179 (C.D.

13   Cal. 2011) ("An ALJ properly may discount a claimant's credibility if his daily activities

14   contradict his other testimony or demonstrate the capacity for work.").

15        Contrary to Plaintiff's objection, after reviewing the ALJ's written opinion and the

16   relevant portion of the R&R, the Court finds the ALJ properly considered *both* of the

17   grounds for using daily activities as the basis of an adverse credibility determination

18   discussed in *Orn*.  The ALJ specifically found "the performance of the claimants' daily

19   activities as described is not inconsistent with the performance of many basic work

20   activities," and "cited to specific evidence in the record that contradicted Plaintiff's

21   assertions that her disability makes it impossible for her to work." (A.R. at 49; Doc. No.

22   24 at 17-18.)  After reviewing the record, the Magistrate Judge found:

23        The ALJ properly considered Plaintiff's activities of daily living in his
         credibility analysis. "[I]f a claimant engages in numerous daily activities
24        involving skills that could be transferred to the workplace, the ALJ may
         discredit the claimant's allegations upon making specific findings relating to
25        those activities." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (citing
         *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)*; see also Morgan v. Apfel*,
26        169 F.3d 595, 600 (9th Cir. 1999) ("[C]laimant's ability to fix meals, do
         laundry, work in the yard, and occasionally care for his friend's child was
27        evidence of claimant's ability to work.")

28

                                          14                      12-cv-2526 AJB (MDD)

(Doc. No. 24 at 17-18.)

Plaintiff relies on *Orn* to assert that the ALJ and the Magistrate Judge failed to specifically state how Plaintiff's daily activities met the threshold for transferable work capabilities.  (Doc. No. 25 at 5-6.)  However, the ALJ found Plaintiff had the residual functioning capacity to perform sedentary and light work as defined in 20 C.F.R. § 404.1567[5], and found Plaintiff's subjective testimony not credible to the extent it conflicted with that assessment.  (A.R. at 46-47.)  The ALJ specifically referred to Plaintiff's daily activities as one of the factors he considered when coming to this conclusion, ultimately finding that  "the performance of the claimants' daily activities as described is not inconsistent with the performance of many basic work activities." (A.R. at 49; Doc. No. 24 at 17.).

For example, the ALJ specifically referenced Plaintiff's August 1, 2006, adult function report, in which Plaintiff reported she was able to "take care of her cats, take care of her personal care, cook meals, dust, sweep, vacuum, water plants, clean the bathroom, deadhead flowers, perform yard work, drive a car, go shopping in stores, pay bills, count change, handle a savings account, use a checkbook and money orders, use email, and follow written and spoken instructions."  (A.R. at 48; Doc. No. 24 16-17.)

The Court finds the ALJ properly considered Plaintiff's daily activities  when making his credibility determination, and finds Plaintiff's objection not persuasive when

---

[5] The relevant portion of 20 C.F.R. § 404.1567 states: "(a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

(b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

viewed in conjunction with the ALJ's direct citation to 20 C.F.R. § 404.1567.[6]  When analyzing this same issue, the Magistrate Judge specifically cited to *Morgan v. Apfel* pointing out the Ninth Circuit's assertion that a "claimant's ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child was evidence of claimant's ability to work." 169 F.3d 595, 600 (9th Cir. 1999).  The ALJ in this case relied upon similar activities.

Moreover, *Orn* is distinguishable on the grounds that the daily activities in *Orn* - reading, watching television and coloring - clearly failed to meet the threshold for transferable work skills*,* whereas the Plaintiff's daily activities in this case were of such a nature and scope as to allow the ALJ to rationally infer transferability.  *See Lemus v. Astrue*, 2010 WL 3768035, at *14 (E.D. Cal. Sept. 22, 2010) (finding ALJ's credibility determination to be rational, despite ALJ's failure to explicitly articulate the transferability of Plaintiff's daily activities given the nature and scope of those activities, as well as the numerous other factors cited by the ALJ); *see also Macias v. Astrue*, 2010 WL 3632807, at *9 (E.D. Cal. Sept. 14, 2010) (distinguishing claimant's daily activities from those of the claimant in *Orn*, pointing out the *Orn* court's statement that daily activities relied upon by the ALJ in that case were "so undemanding that they cannot be said to bear a meaningful relationship to the activities of the workplace.")

Here, as described above, the ALJ made specific findings with respect to Plaintiff's daily activities.  Those findings were rational, supported by substantial evidence, and thus were clear and convincing. For these reasons, the Court overrules Plaintiff's objection.

---

[6]  In addition to Plaintiff's August 1, 2006 adult function report, the Magistrate Judge noted that "[t]he ALJ also cited a report prepared by psychologist, Dr. Whitehead, on August 14, 2006, that reported claimant stated she is able to cook or prepare simple foods and required no assistance showering, bathing, toileting, or other personal hygiene activities, but on her own schedule and timing. (A.R. at 528-529). The ALJ also noted Plaintiff's own testimony wherein she stated she was able to cook, clean, and grocery shop. (A.R. at 139-141). Further, Plaintiff testified she took care of her terminally ill sister until she died. (A.R. at 142). Plaintiff further testified that she used a glider machine without any resistant weights to help try and alleviate 'really bad pain.' (A.R. at 148)." (Doc. No. 24 at 17.)

12-cv-2526 AJB (MDD)

**IV.    CONCLUSION**

      For the foregoing reasons, the Court OVERRULES Plaintiff's Objections, ADOPTS the Magistrate Judge's well-reasoned R&R in its entirety, DENIES Plaintiff's Motion for Summary Judgment, and GRANTS Defendant's Cross-Motion for Summary Judgment.  The Clerk of Court is instructed to close the case and enter judgment accordingly.

IT IS SO ORDERED.


**DATED: March 12, 2014**

**Hon. Anthony J. Battaglia**
**U.S. District Judge**